UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MING CHU WUN,

    Plaintiff,

v.

NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE, *et al.*,

    Defendants.

Case No. 2:11-CV-00760-KJD-CWH

**ORDER**

    Before the Court is Defendant North American Company For Life and Health Insurance's ("North American") Motion to Dismiss (#14) and Defendant Ding-Ho Wang's Motion to Dismiss (#16). Plaintiff Ming Chu Wun has filed an opposition to these two Motions (#19) and Defendants have filed replies (## 20, 21).

I.  Background

    On May 13, 2009 Defendant Wang sold Plaintiff an annuity issued by Defendant North American. Wang and Plaintiff conducted much of the discussion of the annuity in the Chinese language. According to the Complaint, Wang promised Plaintiff that, *inter alia*, the annuity would pay an 8% contract bonus for each of the first 10 contract years in which a withdrawal was not made and that the minimum index growth cap for each fund would be 8%.

After the annuity was issued, Plaintiff discovered that it did not include the 8% bonus credit that Wang allegedly promised her. The Complaint states that Wang represented to Plaintiff that the bonus credit issue could be solved in various ways, but ultimately the issue was not resolved. Additionally, Plaintiff avers that the index growth cap rates for the funds in the annuity are below the 8% that Wang promised to Plaintiff. Plaintiff asserts causes of action for: (1) securities fraud; (2) deceptive trade practices; (3) fraud; (4) insurance bad faith; (5) breach of contract; (6) Breach of the Implied Covenant of Good Faith and Fair Dealing; (7) breach of fiduciary duty; (8) tortious bad faith; and, (9) negligent misrepresentation.

II. Discussion

    A. Legal Standard For Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 1950.

    B. Securities Fraud

"Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe [.]" In re Daou Sys., Inc., 411 F.3d 1006, 1014 (9th Cir.2005) (quotation omitted). Pursuant to section 10(b), the SEC promulgated Rule 10b–5, which makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

To prove a violation of Rule 10b-5, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009). Section 3(a)(8) of the Securities Act exempts from its provisions "[a]ny insurance or endowment policy or annuity contract or optional annuity contract, issued by a corporation subject to the supervision of the insurance commissioner of any state" 15 U.S.C. § 77c(a)(8). The Supreme Court has held that certain types of "variable annuities" with characteristics that make them operate like securities are not exempt from the Securities Act. SEC v. Variable Annuity Life Insur. Co., 359 U.S. 65, 71–72, 79 S.Ct. 618 (1959).

In her opposition to the Motion to Dismiss, Plaintiff argues that the annuity at issue was variable and thus falls outside the safe harbor. However, Plaintiff does not use the term "variable" in the Complaint and does not plead facts showing that the annuity she purchased was variable. Specifically, Plaintiff does not claim that the annuity lacked any guaranteed return – only that the return she received was less than she expected. She has not pled facts showing that payments were directly dependent on the performance of the investments that Defendant American made with her premiums. See, e.g. Malone v. Addison Ins. Marketing, Inc., (225 F. Supp2d 743, 750-751) (finding annuity was not variable when it had a minimum guaranteed return and did not hold money in separate account). Annuities that provide a guarantee in addition to excess interest based on a formula tied to an index are regulated by the Nevada Insurance Commissioner pursuant to NRS 688A and are within the Exchange Act safe harbor. See *Nevada Division of Insurance Report on Nevada Insurance Market, February 2011* at 19. Accessed on 3/12/12 at

3

http://www.doi.nv.gov/sinfo/doc/InsuranceMktReportB.pdf.  Plaintiff has not pled facts showing that the annuity at issue is a security.  Accordingly, her claim for violations of state and federal securities laws fails and is dismissed.

### C.  Deceptive Trade Practices

The Nevada Unfair and Deceptive Trade Practices Act ("DTPA"), found at NRS 598 *et seq*., prohibits a variety of fraudulent and unfair dealings in the course of conducting business.  NRS 598.0955(1)(a) provides exemption from the DTPA for "[c]onduct in compliance with the orders or rules of, or statute administered by, a federal, state or local governmental agency."

Defendants argue that Plaintiff's DTPA claim is barred because the Insurance Commissioner has exclusive authority over insurance carriers pursuant to NRS 57.  See Brown v. State Farm Fire and Cas. Co., 2011 WL 2295162 (D. Nev. June 8, 2011) (finding no private right of action for breach of regulatory or administrative codes).  Here, the conduct that is alleged in the Complaint – misrepresenting the terms of an annuity – is not "conduct in compliance" with NRS 57 or the rules of the Insurance Commissioner.  Plaintiff is not suing pursuant to the regulatory or administrative codes, but under NRS 41.600(2)(e) which specifically provides a private right of action for violations of DTPA. See Weaver v. Aetna Life Ins. Co., 2008 WL 4833035, 4 (D.Nev. 2008) (denying motion to dismiss DTPA claim against insurance carrier).  Since the alleged conduct does not constitute conduct exempt from the Deceptive Trade Practices Act the DTPA claim survives.

### E.  Fraud and Negligent Misrepresentation

Fed.R.Civ.P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The elements of intentional misrepresentation or common law fraud in Nevada are: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the

misrepresentation; and (5) damage to the plaintiff resulting from such reliance. <u>Bulbman, Inc. v. Nev. Bell</u>, 825 P.2d 588, 592 (Nev.1992).

Plaintiff's complaint identifies that in approximately May of 2009 in Las Vegas, Wang acting on behalf of North American, represented that the annuity he sought to sell Plaintiff would pay an 8% bonus credit and would have a minimum index growth cap rate of 8%. Plaintiff alleges that she relied on these statements, that they were false, and that they caused her damage. Plaintiff adequately states her claims for fraud and negligent misrepresentation.

G. Breach of Contract

To state a claim for breach of contract in Nevada, a Plaintiff must demonstrate (1) the existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that the defendant breached, and (4) that the plaintiff sustained damages. See <u>Calloway v. City of Reno</u>, 993 P.2d 1259, 1263 (2000).

The Complaint avers that Plaintiff and Wang, acting as an agent for North American, agreed to certain terms of an annuity. Plaintiff claims that she performed her obligations under the parties' agreement, but that Defendants "failed to honor the agreed upon and promised 8% bonus and 8% index growth cap rate." (Compl. ¶ 93.) Plaintiff avers that these promises formed part of the agreement between the parties. This claim as stated is sufficient to sustain a cause of action for breach of contract against North American at this stage. However, Plaintiff has not pled facts showing that Wang was a party to the agreement between Plaintiff and North American. Accordingly, the Breach of Contract claim is dismissed as to Wang.

H. Insurance Bad Faith

Nevada's definition of bad faith is (1) an insurer's denial of (or refusal to pay) an insured's claim (2) without any reasonable basis and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial. <u>Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Insurance Co.</u>, 863 F.Supp. 1237, 1244 (D.Nev.1994).

Plaintiff does not allege facts showing a refusal by North American to pay a claim without any reasonable basis since North American is paying Plaintiff pursuant to the annuity.  The allegations of the Complaint are focused on the amount owed to Plaintiff and not a refusal to pay. Further, the facts pled by Plaintiff do not demonstrate that North American's conduct constitutes a knowing lack of reasonableness. Accordingly, the claim for bad faith is denied.

### I.  Implied Covenant of Good Faith and Fair Dealing

To state a claim of breach of the covenant of good faith and fair dealing, plaintiff must allege: (1) plaintiff and defendants were parties to an agreement; (2) the defendants owed a duty of good faith to the plaintiff; (3) the defendants breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. Perry v. Jordan, 900 P.2d 335, 338 (Nev.1995). In Nevada, an implied covenant of good faith and fair dealing exists in every contract. Consolidated Generator–Nevada v. Cummins Engine, 971 P.2d 1251, 1256 (Nev.1998).

The Complaint avers that Plaintiff and Wang, acting as an agent for North American, agreed to certain terms of an annuity but that Defendants failed to live up to the agreement.  Specifically, Plaintiff claims that her justified expectations were denied when North American "failed to honor the agreed upon and promised 8% bonus and 8% index growth cap rate." (Compl. ¶ 93.)  Accordingly, the claim for breach of the implied covenant of good faith and fair dealing survives as to North American.  This claim fails against Wang because, as discussed *supra,* Wang was not in a contractual relationship with Plaintiff.

### J.  Breach of Fiduciary Duty

An insurance contract is a special contract that can be fiduciary in nature, but does not create a fiduciary relationship. Martin v. State Farm Mut. Auto. Ins. Co., 960 F.Supp. 233 (Dist.Nev.1997). The Nevada Supreme Court has affirmed that an insurer's duty to its policyholder is "akin" to a fiduciary relationship; however, it also clarified that this conclusion "does not equate to the creation of a new cause of action." Powers v. United Servs. Auto. Ass'n., 979 P.2d 1286, 1288 (Nev.1999).

Plaintiff argues that the Nevada Supreme Court created a cause of action for breach of fiduciary duty against an employer in Insurance Co. of the West v. Gibson Tile Co., Inc., 122 Nev. 455, 134 P.3d 698 (Nev. 2006).  In that case, which cites Powers approvingly, the issue was a jury instruction describing a fiduciary relationship, and not a cause of action for breach of fiduciary duty against an insurer. Since Nevada does not recognize this cause of action against an insurer or an insurance agent, the claim for breach of fiduciary duty fails.

K.  Tortious Bad Faith

A claim for breach of the duty of good faith and fair dealing can be rooted in tort or contract law.  This claim sounds in tort when a "special element of reliance or fiduciary duty" exists between the parties.  Great Am. Ins. Co. v. Gen. Builders, Inc., 113 Nev. 346, 934 P.2d 257, 263 (1997). When such a relationship exists, tort recovery is appropriate if "the party in the superior or entrusted position" has engaged in "grievous and perfidious conduct." Id. (quoting K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364, 1371 (1987)). Although tort liability for breach of the covenant of good faith and fair dealing is limited to "rare and exceptional cases," the Nevada Supreme Court holds that the relationship between an insurer and an insured is one such case. Id.

Plaintiff's claim fails against Wang because Nevada Courts have never recognized the required special relationship between an insurance agent and an insured.  The Court has doubts about whether the allegations of the Complaint could plausibly rise to the level of "grievous and perfidious" conduct by North American required to support this cause of action.  However, the Court cannot say as a matter of law, that Plaintiff failed to state a claim for Tortious Bad Faith against North American. Accordingly, the claim survives against North American.

//

//

//

//

//

III.  Conclusion

**IT IS HEREBY ORDERED THAT** North American Company For Life and Health Insurance's  Motion to Dismiss (#14) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED THAT** Defendant Ding-Ho Wang's Motion to Dismiss (#16)is **GRANTED** in part and **DENIED** in part.

DATED this 15th day of March 2012.

_____
Kent J. Dawson
United States District Judge